Good morning, Your Honor. This is Christopher Cannon for Curtis Martin. Good morning. Your Honor, I'd like to request reserve two minutes for rebuttal, if I may. All right. As I'm sure the Court understands, now that the Supreme Court has decided United States v. Booker and Fan Fan, this case obviously must be remanded back for resentencing in front of Judge Shub. It's very clear from the sentencing transcript from the briefs of both parties in this case that the loss amount in this case was not decided by a jury. The loss amount was decided by Judge Shub. The reason it has to go back is the way that Judge Shub calculated the loss in this case is plainly unreasonable. Does the government attorney agree with you now? I don't believe that he does. I think he would say that this Court could find that Judge Shub went through the appropriate calculations and there's no need for a remand. I would like to indicate why I think that argument is inappropriate and is not well taken. And the reason is because the calculation of the loss in this case was done in an unreasonable fashion. Just like in Ameline where the Court recognized that a defendant has a due process right to an accurate and correct calculation of enhancing factors, Mr. Martin is entitled to a reasonable calculation of what the real loss is in this case, what the intended loss is, what the out-of-pocket loss was to people. And that calculation really never has happened. What happened in this case is that there was a sentencing hearing where Agent Delaney took the stand, presented a spreadsheet and said this is the amount of loss. Well, we would strongly dispute the calculation method of that loss. Essentially what Delaney did was he added up all of the invoices for all of the computers, some of which were circular transactions where there was no loss, and said the loss is $10 million. Mr. Martin contends that the loss is at most $400,000, and there's still at least $800,000 remaining in a trust account that has not yet been issued. What's the effect of the fact now that the guideline is not binding anymore? I would say – In other words, he can make any kind of calculation he wants to now, can't he, the district judge? While the guidelines are not binding, I think this Court's cases of Huckins, Howard, Petty, Jordan, the whole line of cases that deal with the due process that's required at sentencing, the way calculations have to be made, the way judges have to have a rational basis to sentence someone. And in this case, there has not been a rational basis to calculate the amount of loss. There has only been – it's almost as if people threw up numbers and tried to see what would stick. That's not enough. There has to be kind of a rational, organized fashion where people have to say how much was invested, how much was lost, how much was distributed to people. As this Court's previous decisions recognize, there's a big difference between a case where someone tries to take the money and run away with the money. Then it's easy to calculate both the actual loss and the intended loss. So what do you anticipate? You're asking for a remand, but what do you anticipate happening when you go back? I would anticipate a new sentencing hearing in this case where Judge Shub has to calculate what the real loss is to determine what the real harm is because that's really the fact that drives the sentence in almost any type of fraud case. Are you asserting that in calculating the loss, the judge violated the guidelines? I think he violated the – My question, did he violate the guidelines? And I'm not trying to be coy. Did he violate the pre-Booker fan-fan guidelines? Yes, the pre-Booker fan-fan – Yes. You say he did. Yes. In what way? In the manner of calculation of the loss, he didn't apply any particular standard of proof. He based the loss calculations on hearsay. He didn't make a reasonable calculation of the loss, whether it was intended loss or actual loss. He simply accepted the testimony of Agent Delaney and said, well, Delaney says there's about a $10 million loss. I'll set the guidelines at about $4 million because it's in the middle. But he didn't explain his reasoning as to how he came to that amount. Assume no Booker fan-fan decision at all, and you're still under the guidelines. Are you arguing that he misapplied the guidelines? Yes. All right. So if he misapplied the guidelines, then, of course, you're in a good position. But the problem that faces us is whether we should decide he misapplied the guidelines or we should let you go back and go through the whole rigmarole. Because as long as the guidelines are advisory, it seems to me that if – is not unreasonable, it seems to me that it may well be our obligation to affirm without remanding. I understand the Court's statement. I think the Court's statement is misreading Booker and fan-fan. I think if you look at the last – at the last – If we misread 128 pages at this point. I haven't really read what's in the paper, but I've certainly – I've been familiar with what the Department of Justice position has been and what Judge Castle wrote, which seems to me was right on the mark. So that's the problem we're facing, not only here, but everywhere. I understand that in the last line of the opinion of the Court on page 26 of the second opinion of the Court, it states that it is – the Court is discussing what cases have to be remanded, what cases should be addressed under the harmless error standard. And in that case, it says, it is also because in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it would instead be sufficient to review a sentence for reasonableness may depend upon the application of the harmless error doctrine. Well, in this case, there is a clear Sixth Amendment violation because the sentencing occurred in this case under the old pre-Booker fan-fan guidelines. The Court has held that under the old pre-Booker fan-fan guidelines, sentencing – that the guidelines were mandatory. So Judge Shub believed the guidelines were mandatory. He mandatorily imposed a sentence based upon the amount of loss, so that would be a Sixth Amendment violation. Hold it, hold it, hold it. How could there be a Sixth Amendment violation when Booker holds that application of the guidelines in a mandatory fashion is unconstitutional and further holds that it applies to all cases on direct review, which is this case? Because at the sentencing hearing in this case, Judge Shub imposed a sentence believing the guidelines were mandatory. But obviously that belief was a mistake. That's correct. It's not binding. So how can you say – it's not – I can't – I don't understand the argument. That's unconstitutional now under the Sixth Amendment. Sixth Amendment doesn't apply under the Booker regime. At a new sentencing hearing, the Sixth Amendment wouldn't apply, but I would argue to the Court that the Sixth Amendment did apply at the sentencing hearing. So we take that into account. We take that into account in determining whether there was, you know, harmless error. I don't think that can be done because the standard for the evaluation of the evidence was – the standard for the evaluation of the loss and the evaluation of the evidence, one, was done inappropriately because Judge Shub applied to it. So we have to decide whether that, even assuming it's inappropriate, you know, was it harmless? In other words, if he had proceeded under the new regime, one test is, is it likely he would have come out at the same place? Right? In that case, it seems to me it's harmless error, isn't it? I would – no, it would not – I would argue it would not be harmless error, Your Honor, because the sentencing occurred under a framework where the framework was mandatory. Under a mistaken framework. That's correct. Which he didn't have to follow. In other words, if he had sentenced, he'd say, well, you know, Judge Shub would have said, you know, I'm going to predict how Booker's going to come out, so I'm going to treat the guidelines as advisory, and this is my sentence. And he imposed the sentence he imposed today. There would be no error at all, would there? If that was the case, why would we have to remand both Booker and Fanfan for resentencing in accordance with the Supreme Court's opinion? Why couldn't the Supreme Court simply have affirmed both the decisions in those cases? Because in Booker, they couldn't – I think they couldn't tell what happened. In Fanfan, I think it was pretty clear what happened. All right. We've taken some of your time, so I'll allow you a minute for rebuttal. Thank you, Your Honor. Your Honor, good morning. Steve Lapham for the United States. The government's position is that this case should be affirmed. Of course, one of the options is that it be remanded for resentencing, but I think that would be an unnecessary gesture. Judge Shub conducted a very careful sentencing hearing over a day-and-a-half period, took testimony that, yes, included the testimony of Special Agent Delaney, but also included direct testimony from one of the victims, who alone testified that his loss was $3.2 million, which is well over what the judge found the loss amount to be. Is this essentially where you come out? Under the present regime, the new case. The judge used the guidelines as advisory. The judge's finding of what was the loss, $2.5 million loss, there was plenty of testimony that it was more than that, and therefore there is nothing to remand here. It's completely harmless, sir, because even though the Booker and Fanfan cases were not out, that possibility was there, and he is sentenced. There's no Sixth Amendment violation, and it's reasonable. That is absolutely correct. The reasonable standard is what Judge Breyer says we apply in a situation like this, and under any set of facts. But what does that mean in this case? Does that mean that you examine the sentencing procedures and determine whether or not they comply with the requirements of the guideline? And if they don't, it's unreasonable? I wouldn't say it's a straight-line determination. I think the guidelines are now advisory. They guide judges. The judges presumably now can reject in certain circumstances. So if the judge refuses to follow that advice, is the judge being unreasonable? Well, in some cases I think that could be unreasonable if the judge is just obstinate and says for no apparent reason, I choose not to follow this guideline. But what about if, all right, if you had the same hearing now and Judge Shub wanted to give the defendant less or the appellant less, he could do that on this record too, correct? Yes, he could. And we would probably always affirm that as well, correct? Well, hard to say. I mean, arguably, if there was evidence to support that one way or the other. So wouldn't that be, you know, I'm hearing you say in the one sense that maybe Judge Shub was, you know, precognitive in the sense that he held the exact type of hearing that he would have to hold on a remand. So it would be futile to send it back. The only question I have is do we know that he would do the same thing? And is the defendant entitled to or the appellant entitled to make that argument because now he could, in fact, possibly get less on this record? I think that's a fair point. But I think what we know is that it's highly unlikely he will get less because the judge granted two upward departures, the reasonableness of which are before this Court right now. He's made it quite clear on the record that it's unlikely he's going to go lower. As a matter of fact, if it went back, he could go higher. That's right. This is probably a prediction, but I'm wondering since there's appellant review now and the guidelines only advisory, if a sentence made under the guidelines by a judge today or yesterday, isn't it presumptively valid under the Booker and Fanfan decisions? It seems like it would be. And, I mean, isn't that a, that's not the law yet, but isn't that probably the way the laws would go? It seems like the guidelines or advisory, they're the product of a lot of study and research by the Sentencing Commission, and it seems to me a judge to do something other than what the guidelines recommend would have to have a reason supportable in the record for doing it. Well, it's probably similar to California law in the three strikes. You know, you can strike a prior, but if you struck ten of them and it takes outside the spirit of the law, then that's where an appellate court may say you're stepping over. But the courts are going to allow a lot of deference to the judge that's actually hearing the evidence and making those determinations. So it's a question of in this instance, would, I mean, would a sentence be so, would this sentence, if he went below this, would that be so against what the evidence is here? Well, I think the point you make is correct, and it was actually made in the first opinion in this case, that district judges are closer to the evidence, closer to the defendants that come before them day in and day out, and they can assess where defendants fall in the broad range of categories and where they're most appropriately sentenced. So I think a district judge would likely be upheld. So what you're saying is, though, that he could get more if he goes back? So, but then can he complain and say, well, he's being penalized for appealing? No. And I think there's case law on that. Unless there's some evidence of vindictiveness, the fact that he appeals and through some error in the sentencing he can now receive more time, I think that comes under the category of Mr. Cannon, be careful what you wish for. Well, I think the rule has been that on a remand, unless it's specific, the whole sentence is up for grabs, and there have been cases where on remand there's more evidence that's adduced, making this offender worse under the guidelines, and you've got a heavier sentence. I think that's right. So this could be a double-edged sword. District court in this case also imposed a two-level upward departure, right, on the criminal history category. Correct. And as you know, under the I think it's a Protect Act amendments, that would have been subject to de novo review, but that apparently also now is a matter of reasonableness. Is that right? I believe so. And in the first opinion in this case, the panel said that it was appropriate to give a different, that the danger of recidivism is a separate enhancement from the underrepresentation of the criminal history, so it's theoretically appropriate to give an enhancement for each. And it said in Martin 1 that if the judge wanted to do that, the record would clearly support that. It didn't authorize that in advance, but it certainly seemed to say that it was a reasonable thing for the judge to do. So it's just reasonable review, reasonableness review. Right. I think to a certain extent Mr. Cannon's argument is self-refuting. He's basically saying that he didn't get a fair shot at the sentencing hearing in going over the loss amount. What he's really saying is, and I think we argued this on both sides in the brief, there doesn't seem to be much argument about the basic underlying facts of the loss. Mr. Cannon simply thinks that his client should have gotten some credits. And in today's argument, he mentioned the phrase out-of-pocket loss. That's not the standard, because certainly Norm Champ, one of the victims, out-of-pocket loss was reduced by several million dollars only because he was able to get an insurance recovery and he was able to sue Curtis Martin for the losses and round up some property, which he was able to then sell. But that's not reasonable. That's not a reasonable diminishment of the amount of loss. That's really what we're talking about here. And so that's a legal issue. The reason I say his argument is self-refuting, that's a legal issue to be resolved by a court. Sort of more a restitution issue as opposed to a loss issue? Well, right. If we're talking about restitution, we would need to go into those things. If we're talking about the loss for guideline purposes, for calculating the guidelines, then no, those are not issues we need to go into. I've got less than a minute. I just want to reference the fact we do have another issue in this case, and that is the Scherzer report, the whole idea of whether or not it was appropriate for the judge to use the Scherzer report in the sentencing. The fact is he didn't. There was nothing in the Scherzer report that had even the remotest relationship to sentencing. That was merely the report that kicked off the entire investigation. And unless Mr. Cannon is making the argument that everything flows from that and must be suppressed, there's no issue here about its use at the sentencing. I see I have about 20 seconds left. Unless there are no further questions, I'll submit it on that. All right. Thank you, Mr. Lappin. Thank you. Thank you, Your Honors. I'll be brief. The issue I would like to address is why this case must be remanded and whether Judge Shub's calculations at the last sentencing hearing can be viewed by this court now as reasonable. And I don't think they can. And the reason for that is when Judge Shub did his last set of loss calculations, he was looking at the guidelines as they stood. We now know that the guidelines as they stood were unconstitutional. So Judge Shub's decision was based upon a mistake of law. And this court, in United States v. Chey... Wait a minute now. If that's a good argument, that would apply in every case. I think that's true. Well, and then the passage about, you know, we can look at some of these for harmless error in the Supreme Court opinion is meaningless. I think some issues can be looked at harmless error, but where there's an underlying Sixth Amendment violation, I don't think they can be looked at under the harmless error standard. All right. Thank you very much, both of you, for your arguments. This matter will stand submitted. We'll call the next matter, Ron Burdett v. Butte County et al., Case number 03-15840. Good morning, Your Honor. My name is Michael Bush. I represent Ron Burdett. This is an Eighth Amendment case coming out of Butte County.
judges: Bright , Tashima, Callahan